(85 Tex. Cr. R. 172)

KILPATRICK v. STATE.    (No. 5064.)

(Court of Criminal Appeals of Texas.   April 16, 1919.)

1. CRIMINAL LAW ⬤⟳1091(2), 1092(11)—APPEAL—BILL OF EXCEPTIONS—FORM AND CONTENTS—APPROVAL.

A bill of exceptions to the trial court's action in modifying a bill prepared by accused is permissible if it clearly presents the original bill, the trial court's objectionable action, and reasons why deemed objectionable, and was presented to, and approved by, the trial court or by bystanders cognizant of the facts.

2. CRIMINAL LAW ⬤⟳1092(11, 12)—APPEAL—BILL OF EXCEPTIONS — QUALIFICATION OF BILL.

A trial court cannot approve a bill of exceptions tendered by counsel in a criminal case with any qualifications not agreed to by counsel; the proper practice being to mark the bill refused, return it to counsel, and prepare and file what the court deems a sufficient bill, and counsel may then have his bill authenticated by bystanders.

3. CRIMINAL LAW ⬤⟳1092(11)—APPEAL—DEPRIVATION OF BILL OF EXCEPTIONS.

Where counsel for accused did not learn of the nonacceptance of his bill of exceptions by the court until five days after its presentment, or two days before adjournment, and was given no opportunity to have it authenticated by bystanders, such bill containing no indorsement of the court's refusal and no suggested corrections, accused was erroneously deprived of his bill, and the appellate court will either consider the original bill or reverse the case.

4. CRIMINAL LAW ⬤⟳951(1) — MOTION FOR NEW TRIAL — DISCRETION OF COURT — TIME FOR MAKING.

Under Code Cr. Proc. 1911, art. 839, providing that an application for new trial must be made within two days after conviction, but for good cause the court may allow it to be made any time before adjournment, it was error for the trial court, on an arbitrary rule of its own, not to hear evidence offered as justification for not filing within two days a motion for new trial, setting up misconduct of the jury.

5. CRIMINAL LAW ⬤⟳951(1) — MOTION FOR NEW TRIAL—TIME FOR MAKING—DILIGENCE.

A showing that the verdict was returned on Saturday, that the following Monday was Christmas Eve, that the jurors when discharged departed to their various homes, that attorneys

for accused and judge lived in different localities, and that the weather was inclement, was sufficient excuse for not filing a motion for new trial, setting up misconduct of the jury, within two days as prescribed by statute.

6. CRIMINAL LAW ⊛⇒925(3) — NEW TRIAL — MISCONDUCT OF JURORS—STATEMENTS DURING DELIBERATION.

Evidence that two jurors were for acquittal until it was stated to them in the jury room that defendant had killed another man, whereupon they agreed to a conviction, and that certain jurors commented on defendant's failure to testify, shows misconduct requiring the granting of a new trial.

7. CRIMINAL LAW ⊛⇒441—COMPELLING PRODUCTION OF DOCUMENTS.

In a criminal prosecution there was no error in refusing to compel the state's counsel to deliver a copy of a telegram, unidentified, and wholly hearsay and secondary, to defendant's counsel.

Appeal from District Court, Pecos County; James Cornell, Judge.

J. J. Kilpatrick, Jr., was convicted of manslaughter upon a second trial, and appeals. Reversed and remanded.

C. F. Mead, of Marfa, J. R. Hill, of Huntsville, Howell Johnson, of Ft. Stockton, and H. O. Metcalfe, of Marfa, for appellant.

E. B. Hendricks, Asst. Atty. Gen., for the State.

LATTIMORE, J. This is the second appeal in this case. See 189 S. W. 267. On this trial appellant was convicted of manslaughter, and his punishment fixed at five years' imprisonment. The facts sufficiently appear from the opinion.

A verdict of guilty was returned on December 22, 1917, in the afternoon. At once upon its reception the court informed counsel for appellant that they might prepare and present their motion for new trial at any time prior to the adjournment of his court, but that it was his invariable rule to require all motions for new trials, which set up as grounds thereof misconduct of the jury, to be filed within two days after the rendition of the verdict, and that they should govern themselves accordingly in this case. To this the attorneys for appellant assented. The court also notified them at this time that he would be back in Ft. Stockton, where the trial was had, on January 5th, and would hear their motion if they were ready at that time. The case had been transferred to Pecos county on change of venue from Presidio county, and the appellant was represented on his trial by three attorneys. His leading counsel lived at Marfa, in Presidio county, and his other attorneys lived, one at Alpine, in Brewster county, and one at Ft. Stockton, where, as stated, the case was tried. The

judge of the trial court seems to live at Sonora, in Sutton county, all of which places are separated by distances ranging from 30 to 100 miles. The verdict was returned on Saturday afternoon, and, as the jurors had been away from home and in attendance on court for some time, as soon as they were discharged they separated, and each went his way, some of them to homes shown to be many miles distant in the country. It is also shown that the weather was inclement The next day was Sunday, and the day following, Christmas Eve, which is referred to in the statement made and filed by the attorneys for the appellant. No motion for new trial was in fact filed until January 5, 1918. When the motion was presented to the court it was seen that paragraphs 10 and 23B thereof set up misconduct of the jury in various ways. The affidavits of a number of said jurors accompanied the motion, and profert was made in said motion of evidence to show why such motion alleging misconduct had not been filed within two days after the return of the verdict, and also supporting the allegations of misconduct on the part of the jury. When the court found that the allegations of misconduct of the jury were in said motion, he declined to hear or consider the same because not filed within two days; and when counsel for the appellant offered other testimony to show cause why they had been unable to procure evidence of misconduct to enable them to set up that ground in their motion within two days, the court declined to hear such testimony, and entered his order reciting that the court did not sanction or permit the filing of said motion, nor ratify the same, nor consider said motion at all; to which action of the court the appellant excepted, and also gave notice of appeal to this court, praying that notice of such action be entered on the minutes, which was done, and no other order overruling any motion for new trial was made. Said motion for new trial contained many other grounds besides misconduct of the jury.

To all of this action of the court appellant prepared his bill of exception, setting forth at length therein the cause which prevented the filing of said motion within two days; setting up fully the evidence offered in proof thereof, and also that offered in support of the allegations of misconduct on the part of the jury. Being of opinion that such bills should be filed during the term, which expired by operation of law on January 26, 1918, appellant prepared said bill and presented it to the trial court on January 19, 1918, or one week before the expiration of the term. It is shown that the court did not then approve the said bill or suggest any errors in same, but took said bill with him, stating to appellant's counsel that he would probably rewrite it and file one of his own.

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On January 21st appellant's counsel communicated by wire through another attorney with said trial judge at San Angelo relative to said bill, and received a telegram in reply, in substance stating that the judge would file a bill at Ft. Stockton in time for appellant's counsel to examine the same before the adjournment of court. On Thursday, January 24th, the appellant's leading counsel at Marfa received a wire sent by the court at San Angelo, saying that he had just dictated a bill very different from the one presented by counsel; and that this bill would be sent to Ft. Stockton by Friday's mail, and be open for counsel's inspection on Saturday, the 26th, and that the same would then be filed by the district clerk "unless you tell him not to do so." On Saturday morning, January 26th, counsel arrived at Ft. Stockton from Marfa, went to the clerk's office, and found a bill which *they* declined to accept or agree to. They seem to have made efforts to locate the court by telephone at San Angelo, Sonora, and other places, but were unable to do so; their purpose being to try to have a proper bill of exceptions prepared and filed. The bill so prepared was filed on Saturday the 26th, appellant's counsel filing their objections thereto on the same date.

[1] It is permissible under the practice in this court for an appellant to take his bill of exceptions to the trial court's action in modifying, qualifying, or explaining a bill prepared by appellant and presented to the court, but in such case the bill so taken by an appellant should conform substantially to the requirements of bills of exceptions generally; that is, it should clearly present to this court the bill as originally offered, the objectionable action of the trial court relative thereto, and the reasons why such action is deemed objectionable by the appellant; and this bill in this shape should be presented to the trial court and approved by him, or, if not by the court, then by other persons cognizant of the facts, and occupying the relation thereto substantially of bystanders.

[2] Many complaints are made in this court that the trial courts make explanations and qualifications which nullify and render useless the bills as taken in the trial courts. Such should not be the case. Our statute provides for the taking of bills of exceptions for the preservation of errors so clearly that it would seem there would be no misunderstanding about the same. Such bills, when taken, should be presented to opposite counsel for agreement thereto, and to the judge for his approval or rejection; and it is plainly provided that when presented to the court he may make suggestions to such attorneys of such corrections, if any, as the court may deem proper; but we do not find authority in the statute anywhere for any such action of a trial court as the approval of a bill of exceptions tendered by a trial lawyer, quali-

fying same with any character of explanation, unless this course of conduct is agreed to by such trial lawyer. The statutory practice, and the only proper practice, in such case of refusal of the trial lawyer to agree to the suggested corrections of the trial court, is for the court to mark such bill refused, and return the same to such trial lawyer, and the court should then proceed to prepare and file what to the court appears a fair bill, presenting the errors complained of, and the trial lawyer may then proceed to have his bill authenticated by bystanders in manner and form as suggested by statute in such cases, and the duty will then devolve upon this court to settle the controversy.

[3] The course pursued in the instant case was so at variance with our views as to lead us to hold that the appellant has been deprived of his bill of exceptions apparently without fault of his. The bill complaining of the court's action, as stated above, was presented to the trial court a week before the date of adjournment, and the same was not then returned with the court's disapproval, nor was there any suggestion of correction; but the court took the same with him to some place other than the town of the forum, and it was not until Thursday before the necessary adjournment of court on Saturday following that appellant's counsel learned that the bill was not acceptable to the court. As stated, there were no suggested corrections made to appellant's counsel, his bill was never returned to him with the court's refusal indorsed thereon, no opportunity was given him to have the same authenticated in ways other than by the approval of the trial judge. The mutilated corpse of his bill was presented to him by the district clerk under the trial court's direction on the day of the necessary adjournment of the court. It is stated that whole sheets and parts of appellant's bill, in propria persona, were welded on and woven into a wholly different document, the paternity of which appellant denied, and it is also shown that the remainder of his bill was at some place of which he knew nothing. In such situation, what could appellant do? The court was many miles away, and appellant was unable to communicate with him. The bill tendered by him to the court was not acceptable. This court has many times visited upon appellants the consequences of their delays and negligence in failing to follow the statutory methods and to use due diligence in the preserving of error and its presentation here. Shall the state be held to a less degree of effort to do its part in observing the statutory requirements? Are we not to require the same degree of diligence and observation of statutory requirements upon the part of the state when the lives and liberties of the citizens hang in the balance? We think so, and that it is our duty to con-

sider the matters set up in such original bill of exceptions, or else reverse the case directly upon the ground that appellant has been deprived of his bill of exception.

[4] Noticing the matters contained in said original bill, we hold that the trial court erred in not hearing the evidence offered by appellant as justification for not having filed within the two days his motion setting up misconduct. Article 839, C. C. P., says that a new trial must be applied for within two days, but for good cause shown the court may allow the application to be made at any time before the adjournment of the term at which the conviction was had. This court will exercise revisory power over the action of a trial court in the abuse of its discretion as to whether the cause shown for failure to file within two days was sufficient; but we hold that no trial court has the right to substitute an arbitrary rule of its own for that of the statute in such case, nor to refuse peremptorily to even consider whether good cause has or can be shown for failure to file such motion within two days. We also hold that the court may not arbitrarily single out any such matter or ground in said motion and make that subject to a different rule from the rule prescribed by statute for a motion generally. When a motion for new trial is filed after the two days, and profert is made of a showing why same was not sooner filed, it is the plain duty of the court to hear and consider same, and, if it be of opinion that the showing is not sufficient, it may so hold, subject, of course, to review on appeal. This is in accord with the statute. The fact that counsel for appellant agreed with the court to file such motion within two days can make no difference in a proper case, for lawyers are but human, and it is conceivable that a case may occur in which it would be impossible or reasonably impracticable to carry out such agreement, and the court should never conclude such matter arbitrarily when evidence is offered. This is especially true where the well-being of the citizen is dependent on such action.

[5, 6] Further considering the matter set up in said bill, we hold the showing which appellant offered to make in the instant case sufficient excuse for not filing said motion within two days', and, further, that the evidence offered showed misconduct of the jury. The affidavits of the jurors were appended to the motion showing that two of them were for acquittal until it was stated to them in the jury room that appellant had killed another man, and that they thereupon agreed to a conviction. It was also offered to be proven by jurors who were present at the proposed hearing on motion for new trial that certain jurors commented in the jury room upon the appellant's failure to testify in the case. These, we think, sufficient reasons to require the granting of a new trial by the court below, if the same had been considered and acted upon.

[7] There are other errors complained of, but none of any consequence, and we will only notice the matter in reference to the alleged copy of a telegram claimed to have been sent from Candelaria at once after the homicide by authority of the soldiers who were present at the time of the killing, said purported copy being in the possession of the district attorney, and the court being asked to compel the district attorney to deliver the same to counsel for the appellant. We see nothing in the bill of exceptions Nos. 16 and 17, complaining of this matter, which would have justified the court in directing the state's attorney to deliver said paper to appellant. These bills, with their qualifications, were accepted by appellant, and thus became his bills. It was not claimed that there were any witnesses present who could identify said copy or in any way relieve its contents from being wholly hearsay and secondary. It was not an original paper. It further appears that at a former trial of this case, and when the officer who transmitted the message from Candelaria was present and on the witness stand, no effort was made to have him identify the copy or reproduce the contents, and, as stated, we see no error of the lower court in declining to grant the request of the appellant or compel the delivery or production of this paper.

Upon another trial the other matters complained of will probably not occur.

For the errors mentioned the judgment of the trial court is reversed and the cause remanded for another trial.