### ANNIE CALDWELL v. THE STATE.

No. 15218.   Delivered June 8, 1932.
Rehearing Granted November 16, 1932.
Reported in 54 S. W. (2d) 521.

The opinion states the case.

*T. B. Ridgell,* of Breckenridge, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, fifteen years in the penitentiary.

This is the second appeal. The opinion upon the former appeal will be found in 118 Texas Crim. Rep., 401, 40 S. W. (2d) 131.

We see no good to come from an extended statement of the facts. It was admitted that appellant killed deceased by cutting her with a butcher knife. Self-defense was interposed, appellant claiming that deceased had threatened her, and that at the time of the homicide deceased had a piece of iron pipe. She testified:

"She drew back the pipe, and I clinched into her and we tussled, both down on the ground; I was spanking her with the side of the knife; she went to biting me on the leg. I got away from her and was putting my shoe on, * * * and she hit me back of the head with this rock. * * * I caught her and just punched at her with the butcher knife. She was standing there trembling or wiggling, and she fell down."

The state introduced all the parties who were eyewitnesses to the occurrence, save appellant herself, and these witnesses contradicted the testimony of appellant. It was shown that the two women met at the house of a man named Bailey, and that appellant asked deceased if she was carrying that piece of iron for her, and deceased asked appellant if she was carrying that butcher knife for her. Bailey said he told them both to go on away, that he did not want any trouble there, and, in line with other state witnesses, testified that deceased started away

toward her home, and that appellant followed her and threw two rocks at deceased. A witness who was present at the time appellant overtook deceased said, when appellant advanced upon deceased, and used some language which witness did not understand, that deceased raised the piece of iron pipe, and appellant at once grabbed her and they fell to the ground. All these witnesses united in saying that deceased did nothing to appellant, threw no rocks at her, and made no motion to do anything with the small piece of iron pipe she had in her hand until appellant got up to deceased and advanced upon her with the butcher knife. It appears that deceased was afflicted with rheumatism, and one of appellant's witnesses testified on cross-examination that deceased had been using said piece of iron pipe as a walking stick. The butcher knife used by appellant had a long keen blade eight or nine inches long; deceased was cut in a number of places and stabbed through the heart.

Reviewing appellant's complaints as they appear in her brief, we can not say the court erred in rejecting testimony offered by the defense going to show that the pipe had by deceased was a deadly weapon, or such a one as could produce death or serious bodily injury, there being no bill of exception in the record complaining of the rejection of such testimony; nor is there any bill of exception bringing forward complaint of the admission of any testimony from state witness Welch. Mr. Welch swore that he took a written statement from Millett, a defense witness, but the statement was not offered in evidence, nor was Mr. Welch asked to testify to any or all of the contents of such statement.

Appellant insists that his exception No. 2 to the charge of the court points out reversible error. Such exception is rather lengthy and difficult to understand. It sets out in general terms that the charge limited the rights and defenses of the accused, and failed to submit the statute on presumption of guilt from the use of deadly weapons. We find no testimony characterizing the piece of iron pipe had by deceased at the time of the homicide as a deadly weapon, but do find in the court's charge where he specifically told the jury that, if deceased was armed with an iron pipe which was calculated or likely to produce death or serious bodily injury, and was advancing or about to advance upon appellant with said pipe, then the law would presume that she intended to kill appellant or to inflict serious bodily injury upon her. Certainly a charge "limiting the rights and defenses of the accused" is not wrong, unless same be of such nature as to unduly limit same. The court

charged on self-defense against real or apparent danger as same appeared from the standpoint of the accused, and also as justified by threats by the deceased when accompanied by a demonstration. We are unable to see wherein any right of the accused was unduly limited or abridged.

Appellant has an exception covering a page and a half of the transcript to the giving of a charge on provoking the difficulty. We have analyzed as carefully as we can said charge. In it the jury were told that, if they believed beyond a reasonable doubt that appellant, before the difficulty began, did some act, or used language, or both, with the purpose of producing the occasion to kill deceased by inducing deceased to make an attack upon her, and that the acts or language of appellant were reasonably calculated, under the circumstances at the time, to provoke a difficulty, and that such acts or language of appellant, if any, caused deceased to attack appellant, or make other hostile demonstrations toward her, following which appellant, in pursuance of her original unlawful intention, cut and killed deceased, a plea of self-defense would avail her nothing, but she would be guilty of such phase of murder as the facts might evidence. Appellant's complaint seems not directed at the manner or form of this charge, but at the giving of same at all. This is true of the giving of the converse of the charge on provoking the difficulty, to which no exception was taken, but in her brief appellant insists that the facts did not call either for the giving of the charge on provoking the difficulty or the converse thereof. We are not in accord with this contention. Not only does the preponderance of the testimony show that appellant followed deceased, but also that she threw rocks at her, and, when she advanced upon deceased, she was saying things to her, following which deceased seems to have raised the piece of iron pipe. This demonstration furnished appellant the basis for her claim of self-defense. Unquestionably, if appellant by her acts and conduct intended to provoke deceased to make some demonstration which would furnish her a pretext for killing the latter, it would be the duty of the court to submit to the jury the law of provoking the difficulty. We have reviewed each of the other complaints made in appellant's brief, and are constrained to believe none of them present reversible error.

The judgment will be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Annie Caldwell came to the home of Bailey about noon. Bailey had not seen Theresa Johnson that day. Annie remained about two hours, and at that time Theresa passed. Bailey heard her speak, but did not see her. She went across the branch to the home of Mary Kelley. In about forty or fifty minutes Annie returned to Bailey's house. She was alone. Theresa also arrived from a different direction from that in which Annie came. When Theresa arrived, Annie said: "Is you carrying that iron pipe for me?" Theresa replied: "Is you carrying that butcher knife for me?" Neither spoke another word. Annie went north and then turned and followed Theresa.

Walter Shelton was at the house of Bailey at the time to which the testimony of the latter refers. According to the testimony of Shelton, he stopped at Bailey's house. Theresa was there. Annie arrived after Theresa came there. They left the place, Theresa going first and Annie following her. Annie threw a rock at Theresa, who stopped at the Methodist church. When the rock was thrown at Theresa, Annie caught up with her. Theresa struck at Annie with an iron pipe but the witness could not say whether she hit her or not. They then started a tussle, going to the ground. When Theresa got up, Annie cut her with the knife. The witness did not see the knife, as he was some fifty or sixty feet distant from the women.

Catherine Shelton testified that she saw Theresa get a piece of iron from a trash pile. It was an iron rod. Theresa said that Annie had insulted her, and she got the iron pipe to go to see her. She said she was going back to the chief's house. The iron was about one inch in diameter and about two feet long. The witness said that she saw Annie and Theresa after they left Bailey's house. She saw Annie throw a rock or rocks at Theresa. Theresa had a rock, but the witness did not see her throw it. Just as Theresa picked up the rock, they went to fighting. The two women were walking along the road towards the witness. Annie was on one side and Theresa was on the other. Annie threw two rocks. The witness did not know what either said before the fight, but, upon looking back, she saw they were fighting. Annie had Theresa down beating her with a knife. Annie was spanking her with a knife. Annie slacked up, and was fixing her shoe. Theresa then raised up and had a brick in her hand with which she hit Annie on the back of the head. Annie turned around and thrust the knife

into Theresa, who then fell to the ground. At the time Annie was squatting down and tying her shoe, she was bending over. Theresa hit her with the rock. Annie then brought her hand around and stabbed Theresa with the knife.

According to the appellant's testimony, while she was at Chief Bailey's house in conversation with him, Theresa was seen coming. Annie stuck her head around and said: "She will get me today." After a few moments Annie left. She returned to Bailey's house about the same time that Theresa reached there. Theresa drew back an iron pipe to hit Annie, who went into the house and got a butcher knife. Annie stayed in the house a short time and left, going towards her home, which was in the same direction in which Theresa was going. She could not see Theresa until the witness had reached the big road, where Theresa was standing. Theresa had told the witness to go with her to Catherine Shelton's home so the Shelton woman could make proof as to Bailey having been at the home of Theresa. On the way there each threw rocks at the other. Theresa did not give any time to make proof by the Shelton woman, but immediately approached Annie in a threatening manner with the iron pipe drawn to strike her. They clinched, and Annie spanked Theresa with the knife. Theresa then bit Annie. Annie disengaged herself, and was putting on her shoe which had come off, when Theresa hit her on the head with a rock. They then went to tussling, and Annie was spanking Theresa with the knife. Annie had her back towards Theresa when she was hit with the rock. After receiving the blow with the rock, Annie raised up, somewhat dazed, and thrust the blade of the butcher knife towards Theresa, who fell to the ground.

In the charge on threats, self-defense, and provoking the difficulty, the evidence to the effect that the deceased used a rock in the altercation is ignored. Reference is made in the charge to the use of the iron pipe by the deceased. The omission of the reference to the other weapon which other evidence goes to show was used by the deceased was calculated to mislead the jury and leave them of the impression either that the court did not regard the evidence with reference to the rock as true or that he did not regard it as material. Complaint was made of this fault in the charge before it was read to the jury, as shown by several bills of exception and special charges which are found in the record. In response to the appellant's criticism of the charge, the court should have so framed its instruction to the jury as to make them understand that the

appellant's right of self-defense was not restricted to the iron bar, but extended to the other weapon used by the deceased. The precedents upon the subject are numerous.

From Branch's Ann. Tex. P. C., p. 1086, sec. 1937, the following remarks and authorities are quoted: "If the charge of the court mentions the weapons used by deceased or by the alleged injured party it should mention all of them, and in such case the charge is erroneous if it fails to instruct the jury that defendant could defend against either of such weapons. Wilson v. State, 46 Texas Crim. Rep., 527; Hayman v. State, 47 Texas Crim. Rep., 266; Gafford v. State (Texas Crim. App.), 99 S. W., 998."

In the opinion on the former appeal, reported in 118 Texas Crim. Rep., 401, 40 S. W. (2d) 131, holding the charge on provoking the difficulty insufficient, the court expressed some doubt as to the propriety of submitting that issue at all, stating: "It would seem from the evidence more of an issue as to who began the difficulty than as to the provoking of the difficulty."

In the opinion of the writer, the evidence in the present appeal illustrates the soundness of the conclusion stated. The essential elements of provoking the difficulty are laid down in many of the reports. See Howle v. State, 119 Texas Crim. Rep., 17, 43 S. W. (2d) 594; Mason v. State, 88 Texas Crim. Rep., 642, 228 S. W., 952; Cotton v. State, 91 Texas Crim. Rep., 534, 240 S. W., 918; Dugan v. State, 86 Texas Crim. Rep., 130.

In Dugan's case, supra, it is said: "That character of charge is applicable in instances in which the first attack is made by the deceased, but is induced by words and conduct of the accused reasonably calculated and intended to provoke an attack which may be used by him as an occasion for doing harm to his adversary."

From the evidence in the present instance, it is apparent that the appellant and the deceased were enemies. They were rivals for the favors of Chief Bailey, and were jealous of each other. According to the state's evidence, the deceased had armed herself with an iron bar, stating that the appellant had insulted her and indicating an intention to resent the insult. From the state's testimony, the fight began by the appellant throwing a rock at the deceased. There seems no basis for the contention that the rock was thrown to provoke the deceased to make the assault upon the appellant to the end that she might avenge herself, but, on the contrary, was an assault upon

the deceased, which was the beginning of the difficulty for which the deceased had prepared herself, and into which she entered possessed with weapons, some of which, at least, the jury might have well decided were deadly. If the writer comprehends the facts and the law relating to them, they form no basis for an instruction to the jury upon the subject of provoking the difficulty.

For the reasons stated, the motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*